ILND 44 (Rev. 09/20)

# CIVIL COVER SHEET

The ILND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(See instructions on next page of this form.)*

## I. (a) PLAINTIFFS

Kelly Cisneroz, Maria Ramirez,
Robert Nowak, Kelly Joiner;
Samantha Green, James Caruso,

**(b)** County of Residence of First Listed Plaintiff  Cook
*(Except in U.S. plaintiff cases)*

**(c)** Attorneys *(firm name, address, and telephone number)*

Frank Avila, Attorney, 7132 North Harlem Avenue, Suite 107, Chicago,
Illinois, 60631 (773)671-3480 FrankAvilaLaw@GMail.com

## DEFENDANTS

CITY OF CHICAGO

County of Residence of First Listed Defendant
*(In U.S. plaintiff cases only)*
Note: In land condemnation cases, use the location of the tract of land involved.

Attorneys *(If Known)*

City of Chicago
Corporation Counsel

## II. BASIS OF JURISDICTION *(Check one box, only.)*

- [ ] 1  U.S. Government
   Plaintiff
- [x] 3  Federal Question
   *(U.S. Government not a party.)*
- [ ] 2  U.S. Government
   Defendant
- [ ] 4  Diversity
   *(Indicate citizenship of parties in Item III.)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only.)*
*(Check one box, only for plaintiff and one box for defendant.)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Check one box, only.)*

| CONTRACT | TORTS | PRISONER PETITIONS | LABOR | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | [ ] 510 Motions to Vacate Sentence | [ ] 710 Fair Labor Standards Act | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane — [x] 367 Health Care/ | [ ] 530 General | [ ] 720 Labor/Management Relations | [ ] 376 Qui Tam (31 USC 3729 (a)) |
| | [ ] 315 Airplane Product Liability  Pharmaceutical | [ ] 535 Death Penalty | | [ ] 400 State Reapportionment |
| [ ] 130 Miller Act | [ ] 320 Assault, Libel & Slander  Personal Injury | **Habeas Corpus:** | [ ] 740 Railway Labor Act | [ ] 410 Antitrust |
| [ ] 140 Negotiable Instrument | [ ] 330 Federal Employers'  Product Liability | [ ] 540 Mandamus & Other | [ ] 751 Family and Medical Leave Act | [ ] 430 Banks and Banking |
| [ ] 150 Recovery of Overpayment  Liability — [ ] 368 Asbestos Personal | [ ] 340 Marine  Injury Product | [ ] 550 Civil Rights | [ ] 790 Other Labor Litigation | [ ] 450 Commerce |
| & Enforcement of Judgment | [ ] 345 Marine Product Liability  Liability | [ ] 555 Prison Condition | [ ] 791 Employee Retirement | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 350 Motor Vehicle | [ ] 560 Civil Detainee - | Income Security Act | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | [ ] 355 Motor Vehicle Product  Conditions | | | |
| Student Loan | Liability  of Confinement | | | [ ] 480 Consumer Credit |
| (Excludes Veterans) | [ ] 360 Other Personal Injury — **PERSONAL PROPERTY** | | | |
| [ ] 153 Recovery of Veteran's | [ ] 362 Personal Injury - Medical | [ ] 370 Other Fraud | **PROPERTY RIGHTS** | [ ] 485 Telephone Consumer |
| Benefits | Malpractice | [ ] 371 Truth in Lending | [ ] 820 Copyright | Protection Act (TCPA) |
| [ ] 160 Stockholders' Suits | | [ ] 380 Other Personal | [ ] 830 Patent | [ ] 490 Cable/Sat TV |
| [x] 190 Other Contract | | Property Damage | [ ] 835 Patent - Abbreviated | [ ] 850 Securities/Commodities/ |
| [ ] 195 Contract Product Liability | | [ ] 385 Property Damage | New Drug Application | Exchange |
| [ ] 196 Franchise | | Product Liability | [ ] 840 Trademark | [ ] 890 Other Statutory Actions |
| | | | [ ] 880 Defend Trade Secrets | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **BANKRUPTCY** | Act of 2016 (DTSA) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | [ ] 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | [ ] 895 Freedom of Information |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 423 Withdrawal | [ ] 625 Drug Related Seizure | Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | 28 USC 157 | of Property | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/Accommodations | **IMMIGRATION** | 21 USC 881 | [ ] 899 Administrative |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/ Disabilities- | [ ] 462 Naturalization | [ ] 690 Other  **SOCIAL SECURITY** | Procedure |
| [x] 290 All Other Real Property | Employment | Application | [ ] 861 HIA (1395ff) | Act/Review or Appeal of |
| | [ ] 446 Amer. w/Disabilities - | [ ] 463 Habeas Corpus – | [ ] 862 Black Lung (923) | Agency Decision |
| | Other | Alien Detainee | [ ] 863 DIWC/DIWW | [ ] 950 Constitutionality of |
| | [ ] 448 Education | (Prisoner Petition) | (405(g)) | State Statutes |
| | | [ ] 465 Other Immigration | [ ] 864 SSID Title XVI | |
| | | Actions | [ ] 865 RSI (405(g)) | |
| | | | **FEDERAL TAXES** | |
| | | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | | [ ] 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Check one box, only.)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District (specify)
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION ( Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

COUNT III VIOLATION CONSTITUTION – FOURTEENTH

## VII. PREVIOUS BANKRUPTCY MATTERS (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

## VIII. REQUESTED IN COMPLAINT:

[ ] Check if this is a **class action** under Rule 23, F.R.CV.P.

Demand $

CHECK Yes only if demanded in complaint:

Jury Demand: [ ] Yes   [ ] No

## IX. RELATED CASE(S) IF ANY *(See instructions):*

Judge                    Case Number

## X.  Is this a previously dismissed or remanded case?  [ ] Yes  [ ] No  If yes, Case #           Name of Judge

Date: October 31, 2021

Signature of Attorney of Record    Frank Avila

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Kelly Cisneroz, Maria Ramirez, | ) | |
| Robert Nowak, Kelly Joiner, | ) | |
| Samantha Green, James Caruso, | ) | |
| Jose Martinez, Sean Doyle, | ) | No. 1:21-cv-5818 |
| Jeremy Wakefield, Michael Maida, | ) | |
| Kurt Steigerwald, Edward J Fields, | ) | |
| individually and on behalf of similarly | ) | |
| situated employees of CITY OF CHICAGO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| City of Chicago, a municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND TEMPORARY RESTRAINING ORDER

NOW COMES, Plaintiffs Kelly Cisneroz, Maria Ramirez, Robert Nowak, Kelly Joiner; Samantha Green, James Caruso, Jose Martinez, Sean Doyle, Jeremy Wakefield, Michael Maida, Kurt Steigerwald individually and on behalf of similarly situated employees, by and through their attorney, Frank Avila, and complain of the CITY OF CHICAGO, stating:

While reasonable minds can disagree as to the magnitude of the COVID-19 pandemic, the Supreme Court reminds us that "even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021) (emphasis added). Plaintiffs have filed an Application for a Temporary Restraining Order ("TRO") and Preliminary Injunction to maintain the status quo of our city employees and to put an end to this involuntary game of Monty Hall millions of Americans have been compelled to involuntary play. And while the currency of this game is not exclusively money but also the rights to life, liberty, and property, it would be imprudent to not address the magnitude of the economic impact of this case. Absent the injunctive relief Plaintiffs request herein, Plaintiffs will suffer irreparable harm

as their fundamental rights are trampled and they lose their jobs for no reason beyond their sincerely held religious beliefs, rights to conscience, legitimate concerns based on medical and scientific data on the superiority of natural immunity, rates of COVID-19 being the same between vaccinated and unvaccinated populations, side effects of the vaccine and other reasons. Legitimate concerns about the vaccines, for a variety of reasons including natural immunity, side effects, new mRNA technology never used in vaccines before (even if it was studied for vaccines and used in cancer treatments, the desire for long term studies, among other reasons elucidated in this case—they are based on solid scientific and medical data and legitimate reasons—Sweden, Denmark and Finland have limited the use of the Moderna vaccine for males 30 and under because of cardiovascular side effect(s), specifically viral myocarditis.

If Defendants are not enjoined from enforcing the Vaccine Mandates, hundreds of thousands of city workers and will be forcibly removed from our government, thrusting our nation into a state more vulnerable than the city has experienced in a quarter of a millennium. Plaintiffs realize that other cases regarding the city of Chicago that are ongoing have not been granted their TRO nor other injunctive relief they have requested—However, even if this court does not grant a TRO against the vaccine mandate, a TRO against the novel "No Pay Status" would be justified.  This suit may not be allowed to get a TRO against the vaccine mandate and the issue of the vaccine mandate may take a longer time and even higher courts to resolve—but during the time this case is pending,  the city workers, and specifically these Plaintiffs in this case, should be allowed to return to work, OR be allowed to off work in a paid status. We also request  a TRO that would require that all those on the "No Pay Status" would continue to get city health insurance, dental insurance, and all commensurate benefits, including sick leave, vacation time, time and money accrued to their pension. This case and this TRO would also request that the Mayor and the city of Chicago not be allowed to stop people from retiring nor

2

cashing out their pensions, as these Plaintiffs, and all city workers who are vested in their pensions, have a property interest in these pensions. Pensions are governed by existing law and the Mayor nor anyone else in the city of Chicago can force city workers to not retire, nor can they stop city employees from cashing out their pensions. The pensions are sacred and should not be weaponized to enforce this vaccine mandate. Additionally, this TRO should require or at least allow testing for antibodies, and those with antibodies have natural immunity, which according to the most comprehensive study done so far, the natural immunity is superior to vaccine immunity. Specifically, natural immunity is superior to vaccine immunity with regards to the Delta variant of COVID-19. Lastly, if any employee recently tested positive to COVID-19, or perhaps was even exposed to COVID-19 even absent a positive test, with or without symptoms, they have or may have natural immunity, and the COVID-19 vaccines have a waiting period after one tests positive for COVID-19 and employees getting the vaccine should be based on medical data and not the whims of the Mayor of the city of Chicago.

Plaintiffs request that this Court protect the Status Quo and the rights of our city employees by following the temporary injunction issued by Judge Colleen Kollar-Kotelly In that case the constitutionality of the vaccine mandate was disputed Judge Colleen Kollar-Kotelly for the District of Columbia District Court issued a temporary injunction in a case entitled *Church v. Biden,* 1:21-cv-2815. The court there ordered the defendants in the case to inform the court by 12 PM (10/29/2021) indicating whether or not they voluntarily agree that no plaintiff will be disciplined or terminated pending the court's ruling on a request for a temporary restraining order. The Mayor, Lori Lightfoot, and thus the City of Chicago, have bullied, coerced, and forced city of Chicago employees under duress to sign the portal or be on a "No Pay Status"—a "No Pay Status" that has no basis in any law, ordinance, regulation, rule, Civil Service employee status and due process rights and rules, Union contracts, or anything at all. The "No Pay Status'

3

was created out of thin air sua sponte by the city of Chicago Mayor Lori Lightfoot with no basis in law. This violates the First Amendment of the Constitution, Freedom of Religion, Natural Law, Civil Service Status, Union Contracts, and is not based on science nor medicine.

In Summary, the city claims that they are allowing those with legitimate religious exemptions to be exempted from the vaccine mandate, but this has not been the case. To counsels' knowledge religious exemptions are being denied or simply no ruling is being made on them without any justification whatsoever. Employees are being terminated and not being allowed to appeal these decisions the City of Chicago ostensibly provides each employee who is discharged or suspended for ten days or more the right to a hearing before the human resources board. 2-74-060. There is no reason why employees based on their religion should not be granted this right. WHEREFORE, Plaintiffs respectfully request judgment as follows: 1.) an Order requiring the city to review the religious exemptions and grant those that were submitted in good faith and provide a reasoning for those it denies. 2.) Allow employees to being their administrative claims to the human recourse board within 10 days per the current rule 3.) until the courts make a full ruling on this and other pending cases order the city to not take away salary and health insurance 4.) Either halt the mandate or enforce it on all city personal including namely alderman.

## PARTIES

1.                                                                     Kelly Cisneroz is an employee of the City of Chicago and is a member of the Department of Transportation. She is Caucasian, and ethnicity/national origin from Ireland and Italy. She has been with the city for 21 years. She is an Asphalt Laborer. She is a Civil Service Employee and is a member of the Local 1001 Laborers Union which has a contract with the city. She did go in the portal under duress and coercion, because she has an exemption based on religious and

conscience grounds. No exemptions have been ruled upon. Kelly Cizneroz an essential worker and worked throughout the pandemic. She has a property right in her pension. She was exposed to COVID-19 at work, but did not get any symptoms. She was exposed to COVID-19 separately on different occasion and had some symptoms and tested positive for COVID-19 in February of this year and thus may have natural immunity. She lost her taste and smell when she had COVID-19. Kelly Cizneroz is an essential worker, and worked through the COVID-19 pandemic and the summer of 2020 riots, looting, arson, murder, assault, attacks on city vehicles, arson to police cars etc.

      2.      Francisco Roman is an employee of the City of Chicago Police Department. His job and title is Detective. He has been on the city and the police department for 25 years. Francisco Roman is of the Hispanic/Latino Race/cultural identity, and of the Puerto Rican national origin/ethnicity. He is an essential worker and first responder. Francisco Roman worked during the COVID-19 pandemic. Francisco Roman worked during the summer of 2020 riots, looting, arson, attacks on police officers, protesters spitting at police officers, throwing bricks at police officers, attacks on police and other city vehicles, the highest murder rate in 60 years during the riots, arson on police vehicle, carjacking, assaults, high crime and a high stress and dangerous time and position and being exposed to large crowds. Francisco Roman is vested in his pension. Francisco Roman has a property interest in his pension. Francisco Roman is fully vaccinated with 2 shots of the Moderna COVID-19 vaccine, and has the vaccine card. He is willing to show his vaccine card and proof of COVID-19 vaccination to his supervisor. However, he does not want to put his vaccine status nor any medical information into a portal. He does not even want to put his status and information in this suit which will or could be part of the public domain without a confidentiality order—but he feels strongly that he must take a stand against the mandate and portal. He is concerned about the safety and security and privacy of the

portal. He believes he has HIPPA protections and does not need to log in to any portal. He is willing to show the Superintendent of Police of the City of Chicago, or his direct supervisor, or both or anyone else as needed, his COVID-19 vaccine card and proof of vaccination—but he does not want to give them his card nor give them a copy of his card. However, he does not believe that Mayor Lori Lightfoot has the power to unilaterally create this mandate, and if she does the power to create this mandate, she does not have the power to put people who do not log in to the portal on a "No Pay Status". Francisco Roman is a Civil Service employee of the city of Chicago and a member of the police union, FOP Lodge 7 (Fraternal Order of Police), and his union has a contract with the city of Chicago. Francisco Roman was exposed to COVID-19 on the job as a Chicago Police Officer, and received "Injury on Duty (IOD)" status and benefits, on/or about August of 2020. Thus, Francisco Roman has or may have Natural Immunity and antibodies because he had COVID-19 with extreme symptoms and was hospitalized, AND he is fully vaccinated with the 2 shots of Moderna COVID-19 vaccine. Before Francisco Roman tested positive for COVID-19 and was vaccinated, he was doing 12 hour days with no time off. He was hospitalized due to the COVID-19 virus and infection and was hospitalized for 2 weeks with very serious symptoms, including but not limited to, his lungs were not working to capacity, and his oxygen in his blood was low, he was so weak that he could not walk nor go to the washroom and the hospital gave him prednisone, experimental antibody shot, put him in a breathing room, put in a special room by himself and his friends nor family could visit him, and doctors, nurses and medical personnel had to treat him while they were wearing hazmat suits. Francisco Roman has not signed the portal, wants to file an exemption, but is still working at the city because he is a high need Detective.

3.      Maria Ramirez is an employee of the City of Chicago, and is a member of the Police Department. She is a female. She is Hispanic. She is not vaccinated. She is healthy. She

had COVID-19 on December 3rd, 2020 and has the antibodies and has natural immunity. She did not go into the portal because she had concerns about privacy, and filed an exemption on religious and conscience grounds. None of the exemptions were denied nor approved. She is Civil Service employee, and a member of the police union, FOP Lodge 7 (Fraternal Order of Police), which has a contract with the city. Maria Ramirez is a police officer, first responder, and essential worker and worked throughout the pandemic and high crime, looting, arson, rioting etc. She has a property right in her pension. Maria Ramirez has served the public and the city of Chicago as a Chicago Police Officer for 20 years.

4.      Robert Nowak is an employee of the City of Chicago, in the Department of Fleet Services. He is on a "No Pay Status". He filed an exemption, but no exemptions were ruled on. He is a Civil Service Employee and is part of the Local 126 International Association of Machinists and Aerospace Workers. He has worked at the city for 17 years. He is an essential worker and worked through the pandemic. He was exposed to COVID-19 at work but did not get symptoms. The city told Robert Nowak, and many others, not to test when they were exposed to COVID-19. He has a property right in his pension.

5.      Kelly Joiner is an employee of the City of Chicago, and is a member of the Department of Transportation Bureau of Streets as a Concrete Laborer. She is a member of the Local 1001 Laborers Union. She has been on the city for 21 years. She is a Civil Service Employee with the City of Chicago and is a member of the Laborer's Union with a contract with the city. Kelly Joiner is an essential worker and worked throughout the pandemic. She was exposed to COVID-19 on the job, was sent home, was told not to test, but did have symptoms. Kelly Joiner worked through the COVID-19 pandemic and the summer of 2020 riots, arson, looting, assaults, car jackings, attacks on city vehicles, arson on police cars, high crime and

murder. Kelly Joiner filed a timely appeal with the Human Resources Board because the "No Pay Status" is the equivalent of a suspension. She has a property right in her pension.

6.      Samantha Green is an employee of the City of Chicago, in the Department of Transportation with the title of Asphalt Laborer. She has been an employee  the city of Chicago for10 years. She is on Ordinary Disability awaiting benefits. She did not get any notice to sign into the portal of the city for the COVID-19 vaccine. The City of Chicago, nor her Department, nor her superiors, have communicated with her in any way. Nor was she on notice of filing any exemptions, but she did file an exemption to act proactively. She has filed a religious exemption. She is an essential worker and worked throughout the pandemic. She was exposed to an individual at work with COVID-19 and had symptoms, and is getting tested for antibodies and may have natural immunity. Samantha Green worked through the COVID-19 pandemic and the summer of 2020 riots, arson, looting, assaults, car jackings, attacks on city vehicles, arson on police cars, high crime and murder. Her driver got COVID-19 and she was exposed and had symptoms, and she let the city know, and the City fought her to go on quarantine.. She has a property right in her pension. Samantha Green is a Civil Service Employee and a member of the Laborers Union Local 1001, and her union has a contract with the city.

7.      James Caruso is an employee of the City of Chicago, and is a member of the Department of Transportation. He is a Concrete Foreman. He did not sign into the portal, but somebody signed in the portal for him. He has a religious exemption. He is still working but somebody signed in the portal for him. He has worked for the city for 28 years. He is a Civil Service employee and a member of the Local 1001 Laborers Union that has a contract with the city of Chicago. He has a property right in his pension. James Caruso is an essential worker and worked through the COVID-19 pandemic.

8. Jose Martinez is an employee of the City of Chicago, and is a a member of the Streets and Sanitation Department in the position of Laborer. He has worked for the city for 13 years. He is of the Hispanic race. He did not sign into the portal because there was no disclosure of what 3rd parties that may see his medical information. He is hesitant to take the vaccine because he is healthy, and the vaccine does have side effects and it is relatively new and he believes there needs to be long term studies of this vaccine. Jose Martinez has religious and personal beliefs of his conscience as to why he does not want to take the vaccine and filed an exemption. No exemptions have been ruled on. He is in a "No Pay Status". He has a property right in his pension. He was exposed to COVID-19 at work. Jose Martinez is an essential worker that worked through the COVID-19 pandemic and he worked through the riots, looting, arson, high crime, murder, assaults, attacks on city vehicles, arson on police cars etc. Jose Martinez is a minority and specifically Hispanic. Jose Martinez timely filed an appeal of his "No Pay Status", which is the equivalent of a suspension without pay, with the Human Resources Board. The Human Resources Board is not taking any "No Pay Status" appeals.

9. Sean Doyle is an employee of the City of Chicago and is a member of the Chicago Department of Transportation (CDOT), Bureau of Electricity. He is a Civil Service Employee and a union member in IBEW (International Brotherhood of Electrical Workers) Local 9 and his union has a contract with the city. His title and job is an Electrician. He has a property interest in his pension. He complied with the portal and has complied with COVID-19 testing. He has no problem with testing for COVID-19 but objects to the mandate on religious ground. He has filed an exemption on religious grounds. No exemptions were ruled on by the city. Sean Doyle is an essential worker who worked through the pandemic. He was exposed to COVID-19 recently at work and had mild symptoms so may have natural immunity and wants to test for antibodies. He clears and makes safe, with his co-workers, live wires in the street, and

poles that got knocked down for various reasons like a car knocking them down in an accident or a heavy wind and storms. He normally fixes street lights but is also available when there are emergencies. He has a 24 hour shift every day of the week. Someone always has to be in his position. He took ivermectin when he had COVID-19 and there were no side effects and he got better. Since he recently had COVID-19, he should not take the vaccine so soon, and probably has natural immunity. Sean Doyle has served the public by ensuring safety for residents and business in the city of Chicago, as a city of Chicago employee for 24 years.

10.                                                                                              Jeremy
Wakefield is an employee of the City of Chicago, and is a member of the Department of Streets and Sanitations, Bureau of Traffic Services. His title and job is a Laborer. He, and his co-workers in that same position, put up the barricades for emergencies and special events. He is an essential worker and worked through the COVID-19 pandemic and the summer of 2020 riots, looting, arson, murder, high crime, assaults, car jackings, attacks on city vehicles, arson to police vehicles, and other such mayhem. He has a property interest in his pension. He filled out the portal but did so under coercion and duress and has a religious exemption to the vaccine that he wishes to file. He is currently working but wants to file an exemption and wants his exemption to the vaccine mandate to be heard. Jeremy Wakefield was exposed to COVID-19 at work, tested positive for COVID-19 and had symptoms—thus he may have natural immunity and antibodies. He is a Civil Service Employee and a member of the Local 1001 Laborers Union, and his union has a contract with the city of Chicago.

11.     Michael Maida is an employee of the City of Chicago, and is a member of the Chicago Department of Transportation (CDOT) as a Asphalt Laborer. He is a Civil Service employee and a member of the Local 1001 Laborers Union which has a contract with the city. He has a property interest in his pension. Michael Maida is an essential worker and worked

10

through the COVID-19 pandemic and the summer of 2020 riots, looting etc. He complied with the portal but filed an exemption and wants his exemption the vaccine to be heard. No exemptions have been ruled on. He was exposed to COVID-19 at work but did not test positive for COVID-19 and did not get sick, nor did he have symptoms but may have a strong immune system, or if he was exposed-he may have natural immunity and antibodies. He has a religious objection to the vaccine and did file an exemption and wants his exemption to be heard. He is still working and did comply with the portal but opposes the vaccine mandate and did file an exemption based on his religious beliefs and his right to conscience. Michael Maida has served the city as an employee for 25 years.

12.     Kurt Steigerwald is an employee of the City of Chicago, and opposes the vaccine mandate and has a legitime exemption. He complied with the portal under coercion and duress. He is currently still working and is not in a "No Pay Status."

13.     Edward J Fields  is an employee of the City of Chicago, and is a member of the Department of Streets and Sanitations, Bureau of Traffic Services. His title and job is a Laborer. He was worked for the city for over 23 years and has a religious exemption, he was told he will lose his health insurance effective November 1st if he does not comply with the mandate.

14.     All plaintiffs are Civil Service Employees with commensurate rights, Procedural and Substantive Due Process rights, procedures, laws, rules, regulations, and ordinances with the City of Chicago, and appeal rights with the City of Chicago Human Resources Board. All Plaintiffs are union members and all these unions have contracts with the City of Chicago and these contracts govern discipline, appeals from discipline etc.—The Plaintiffs are members of the following unions: The Laborers Union Local 1001, the FOP Local 7, International Association of Machinists and Aerospace Workers Local 126, and IBEW (International Brotherhood of Electrical Workers) Local 9—and many other Civil Service Employees and Union Members

have contacted the attorney on this case to join the law suit. All Plaintiffs have a property interest in their pension. All Plaintiffs are Essential Workers and worked through the COVID-19 Pandemic, and worked through the summer of 2020 riots, looting, arson, murder, high crime, assaults, assaults on city workers, attacks on city vehicles, arson on police vehicles, stressful work conditions, and general mayhem. All of the Plaintiffs were exposed to COVID-19 at work, some of them tested positive, some of them had symptoms and some had no symptoms. These Plaintiffs reflect a diversity of demographic, geographic and other differences and include male and female workers. Some of the Plaintiffs are in the "No Pay Status" without due process nor appeal rights. All Plaintiffs oppose the vaccine mandates. All Plaintiffs have exemptions to the vaccine mandate which have not been ruled on, some of the exemptions are religious and all are based on right conscience. All Plaintiffs are afraid of retaliation by the city of Chicago. Some or all of the Plaintiffs have or may have natural immunity and antibodies. All Plaintiffs are long time city employees. No exemptions have been ruled on. Some of the Plaintiffs are religious and are against abortion and have legitime objections to the vaccine mandate and have filed or want to file exemptions. All Plaintiffs have filed exemptions or want to file exemptions. All the Plaintiffs are vested in their pensions.

15.     The City of Chicago is a municipal corporation located in the Northern District of Illinois, Eastern Division. It employs all of the Plaintiffs and has enacted the Complained of vaccine mandate.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1331 because the Complaint seeks equitable relief and damages under federal statutes and the US Constitution.

17.     This Court has supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367 because the state-law claims are integrally related to the federal claims.

12

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the relevant events took place in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

### The City Announces a Vaccine Mandate for all Municipal Workers

19.     Vaccinating people is not a compelling government interest in and of itself. Rather, the government's interest is in protecting the lives and fundamental rights of the state's residents. A study led by a Harvard researcher found high rates of infection in communities with high rates of vaccination. The introduction to the journal article noted a surge in cases in the United States and Israel. But the study itself analyzed the relationship between the percentage of population fully vaccinated and new COVID-19 cases reported over a seven-day period across 68 countries and across 2,947 counties in the United States. The periods varied slightly by area, but were in late August and early September. Now, admittedly, the CDC says there are higher mortality rates among the non-vaccinated population—but the vast majority of mortality cases are senior citizens, people with cancer, heart disease, that are obese, have diabetes, have high blood pressure, and other conditions—e.g. that are people with high rates of co-morbidity---so the vaccine will not stop the spread of COVID-19 among city of Chicago workers nor in the city of Chicago—although there may be a decrease in serious symptoms and deaths in certain populations that are at a high risk. The natural immunity of COVID-19 (immunity gained because one had COVID-19) is superior to vaccine immunity, and natural immunity is especially in the cases of the Delta variant. Thus, any city worker who already had COVID-19 and survived, has or may/should/does have antibodies and natural immunity. These Plaintiffs are all essential workers, worked during the COVID-19 pandemic, some interact with the public, all interact with other co-workers, most were exposed to COVID-19 on the job, and worked during the summer of 2020 riots, looting, arson, murder, high crime, assaults, assaults on city workers,

13

attacks on city vehicles, arson of police vehicle(s), carjacking and other stressful and dangerous situations with large crowds. Any employee with antibodies and natural immunity should not be forced to take the vaccine. Somebody who recently had COVID-19, should not be forced to have the vaccine on Mayor Lori Lightfoot's deadline, but it should be based on medical reasons and there is a waiting period between having/testing positive for COVID-19 and then taking the vaccine.

20.     During that time frame, the study found, countries with a higher percentage of population fully vaccinated had a higher rate of new COVID-19 cases per 1 million people. Thus this mandate, according to a large study by Harvard researcher(s), would not decrease the incidences of COVID-19 rates among city of Chicago employees/workers nor residents of the city of Chicago.

21.     The findings were similar in the U.S. Of the five counties with the highest vaccination rates, three of them — Chattahoochee (Georgia), McKinley (New Mexico) and Arecibo (Puerto Rico) counties — had above 90% of their population fully vaccinated while also being identified by the Centers for Disease Control and Prevention as high-transmission counties.

22.     Mayor Lightfoot announced that the city would require all municipal workers to be fully vaccinated. This was a unilateral decision, not based in law, and that lacks authority at least in the way it was implemented. This was not based on a vote of the City Council. This was not a recommendation of a Health official. Even if the Mayor has the right to implement a vaccine mandate, she does not have the power to create a novel "No Pay Status"—the "No Pay Status" does not exist for city of Chicago workers and it violates Civil Service due process rights and procedures, Human Resources Board appeals and process, Union Contracts that negotiate

14

punishment—and there are violations of city mandates that have no consequences because it is not in a union contract.

23.     Specifically, the City of Chicago, through the Office of the Mayor, created a policy that requires all employees, including those employees who are not Health Care Workers, to be vaccinated by October 15, 2021, or to undergo twice weekly testing. She did not ask/mandate them to test for antibodies. She did not ask nor mandate who already had COVID-19 and may have antibodies and natural immunity. She did not ask nor mandate who recently had COVID-19 and may need to wait longer than the artificial timeline created by the Mayor, to take the vaccine. Vaccines are not supposed to be administered to people who just had COVID-19 and there is a waiting period.

24.     The City of Chicago mandate requires employees to enter their vaccination status into an online portal (there is no option to submit their status in paper, or over any other more secure medium) or face unpaid leave or suspension. The portal is not explained. One vaccinated police officer does not want to put his vaccination status nor any medical information in a portal that he does not know who has access to, if it is secure, it is not negotiated by his union contract, and who controls the portal. Why does the vaccine status need to be put in the portal.

25.     Employees who persist in not entering their vaccine information into the online portal face potential suspension and termination. Several of the Plaintiffs here have already been placed on "no pay status."

26.     The "soft mandate" is presently set to end at the end of 2021, and will then be replaced by a "hard mandate," which does not permit employees to test twice weekly in order to remain employed.

**City Vaccine Exceptions**

27.     Employees are permitted to seek exemptions. However, the exemptions can only be sought using forms provided by the City of Chicago. And the city of Chicago has not ruled on any of the exemptions currently filed.

28.     The form for a religious exemption request requires the signature of a religious or a spiritual leader. It requires employees to identify their religion, their religious belief that conflicts with their taking the COVID-19 vaccine and the "specific way that your religious beliefs prevent you from being vaccinated." Some of the Plaintiffs in this case are against abortion, and they do not want to utilize nor be injected with a vaccine that has tissues from aborted babies/fetuses. Many religions and belief systems have objections to vaccines and medical procedures, including, but not limited to, the Amish, Jehovah's Witnesses, Christian Scientists, and to a lesser extent some Seventh Day Adventists among other religions and belief systems.

29.     It also asks when the employee began practicing this religion or following their beliefs, and whether their religious beliefs include objections to other vaccines or medications. This is offensive, abusive, onerous and violates the Freedom of Religion. Employers can't discriminate based on actual or perceived religion, which includes religious observances, practices, and beliefs. For related harassment provisions, see "Harassment" in this summary. Reasonable accommodation requirements: Employers must make reasonable accommodations for employees' and applicants' religious observances or practices, unless employers can show that these accommodations would impose undue hardship on their business. Employers can't impose terms or conditions on employees and applicants that would require them to violate or forgo sincerely held religious practices.

30.     Given that the requirements of this form are more onerous than the much less onerous requirements of either Title VII of the Civil Rights Act or the Free Exercise clause of the First Amendment, many plaintiffs believed that by filling out these forms they were setting themselves up for failure. Indeed, many of the Plaintiffs here did fill out their forms and their exemptions were not accepted despite their deeply held religious beliefs.

The unilateral, novel and unprecedented mandate by city of Chicago Mayor Lori Lightfoot violates Title VII discrimination based on Religion in the workplace.

31.     For example, whether a party can get the signature of a spiritual or religious leader is irrelevant to whether they have a deeply held conviction that requires a reasonable accommodation. There are increasing amounts of people in the United States that are "spiritual but not religious". Even with those individuals and groups that are part of more traditional organized religion(s), specifically during COVID-19, watch Mass/Liturgy/Sermons/Prayers etc. on TV or the Internet and are not connected, or not as connected, to their priests, pastors, imams, rabbis etc. Even those in organized religions may have deeply held personal beliefs, syncretic and eclectic beliefs that are not completely reflective of the organized religion to which they belong. There are also different and varying opinions on prudential matters in organized religion(s) or at least some organized religion. This is discriminatory against private people, loners and those who are isolated because of personal choice, mental illness, physical disease or any reason.

32.     The City of Chicago ordinances state that "no employer shall refuse to make all reasonable efforts to accommodate the religious beliefs, observances, and practices of employees… unless the employer demonstrates that he is unable to reasonably accommodate an employee's… religious observance or practice without undue hardship on the conduct of the employer's business." 2-16- 050.

17

33.     The City of Chicago ostensibly provides each employee who is discharged or suspended for ten days or more the right to a hearing before the human resources board. 2-74-060. However, the City of Chicago is now summarily suspending employees without pay if they do not utilize the portal and disclose their vaccination status.

34.     The city mandate was not authorized by a vote of the City Council. Rather, it was unilaterally undertaken by the Mayor despite being a fundamental change in the requirements and terms of employment. Even if she can make the mandate, which of course or position is she cannot---the Mayor has NO ability nor authority to put people on "No Pay Status".

35.     The mandate is being applied inconsistently in that some employees (namely, teachers) are permitted to test once per week, and the test is brought to their employment at no cost, while Plaintiffs here are required to test on their own time, twice per week, and to bear the costs if there are any. This violates the Equal Protection clause—also Alderman of the City of Chicago are not mandated to take the vaccine. Free testing, common/frequent testing, and numerous locations for testing are decreasing.

36.     The mandate is being applied inconsistently in that some employees (namely, alderman are not required to be vaccinated while Plaintiffs are. [1] This violates the Equal Protection clause. City workers, or most city workers are treated differently and disparately treated when compared to Chicago Public School employees and City of Chicago Alderman.

37.     The Vaccine Mandate violates Title VII and discriminates based on Race and National Origin/Ethnicity. Minorites, specifically Black African Americans and Hispanics/Latinos have lower COVID-19 vaccination rates that the population at large and lower than the vaccination rates of the White(s)/Caucasians. This vaccine mandate is discriminatory

---

[1]https://blockclubchicago.org/2021/09/30/aldermen-are-not-subject-to-city-worker-vaccine-mandate-and-some-are-skipping-the-shots/

based on race against Black African Americans and Hispanics/Latinos. The vaccine mandate is discriminatory based on National Origin/Ethnicity against African immigrants, US citizens of African ancestry, immigrants from Caribbean countries, US citizens of Caribbean countries, immigrants from Mexico, immigrants from Cuba, immigrants from Puerto Rico, immigrants from Central America, immigrants from South America, Mexican Americans, and US citizens of Cuban, Puerto Rican, Central American, South American and/or other Hispanic/Latino ancestry. There is a long history of suspicion among some to many minorities, especially and specifically African Americans to authority, government, mandates, big pharmaceutical countries, etc. The Tuskegee Study of Untreated Syphilis in the Negro Male (informally referred to as the Tuskegee Experiment or Tuskegee Syphilis Study) was an ethically abusive study conducted between 1932 and 1972 by the United States Public Health Service (PHS) and the Centers for Disease Control and Prevention (CDC) on a group of nearly 400 African Americans with syphilis. The purpose of the study was to observe the effects of the disease when untreated, though by the end of the study it was entirely treatable. The men were not informed of the nature of the experiment, and more than 100 died as a result.

38.    There are many more incidents like this against Black African Americans, Hispanic/Latinos and specifically Mexican immigrants, Mexican Americans, people of color in third world countries, and Jewish people by the Nazis during the Nazi regime in Germany. While the history lesson is important as to why some minorities, specifically Black African Americans, and Hispanic/Latino populations and especially the Mexican immigrant and Mexican American populations have caution and reasons to be concerned –but the most recent data demonstrates the lowest vaccination rates are among Black African Americans and Latinos/Hispanics. This is NOT to equate the Vaccine Mandate with this horrible acts and tragedies in history—but merely to provide context.

19

39.     As of this week, federal data from the Centers for Disease Control and Prevention (CDC) show that 66% of the total population in the United States have received at least one dose of a COVID-19 vaccine. While this has the led to increased vaccination coverage—and the protections provided by it—remains uneven across the country. Though as of October 25, 2021, White people accounted for the largest share (60%) of people who are unvaccinated,1 Black and Hispanic people remain less likely than their White counterparts to have received a vaccine. While these data provide helpful insights at the national level, to date, CDC is not publicly reporting state-level data on the racial/ethnic composition of people vaccinated.

40.     A mandate that is coerced and forced under duress, and those that do not comply, no matter the legitimacy of the objection to the mandate and commensurate exemptions, is not going to increase vaccination status among Black African Americans and Latinos/Hispanics— and in fact is causing and would cause more vaccine hesitancy. The mandate is not a customized health and communication strategy within minority communities and does not take into account the Religion(s), Race(s), National Orgins/Ethnicities, nor the Culture of the city workers. This is a strategy that discriminates against Black African Americans and Hispanics/Latinos that have lower levels of COVID-19 vaccination compared to the population at large and compared to the White/Caucasian and Asian communities.

**Vaccine Research**

41.     A newly published study found that there is "no discernable relationship between percentage of population fully vaccinated and new COVID-19 cases in the last 7 days." The study found, to the contrary, that there was "a marginally positive association such that countries with higher percentage of population fully vaccinated have higher COVID-19 cases per 1 million people." That study, which analyzed 68 different countries' vaccination rates and the rate of new COVID-19 cases, specifically referred to Israel, Portugal and Iceland, each of which is highly

vaccinated and which had more cases per 1 million people than, for example, Vietnam and South

Africa, which have around 10% of their population fully vaccinated.[2]

42.     Several scholarly journals have also weighed in on the superiority of natural

immunity to vaccine immunity.[3]Further, those who previously were infected with COVID-19

were at greater risk for bad side effects associated with the vaccine; in such cases, the vaccine

might even weaken their pre-existing immunity .

43.     While the vaccines have been effective at preventing serious cases and deaths,

they lag far behind natural immunity in preventing symptomatic cases of COVID-19, and,

therefore, transmission of COVID-19.

### COUNT I DECLARATORY JUDGMENT

44.     Violation of the Due Process Clause of the U.S. Constitution.

45.     Plaintiff realleges and incorporates into this cause of action the allegations of the

of the Complaint set out above.

46.     The powers and duties of the mayor or chief executive rest almost entirely upon

the proper construction of the charter and the ordinances or bylaws and municipal regulations

passed in pursuance of such authority.[4] Accordingly, a mayor is without lawful authority to

---

[2] Subramanian, S.V., Kumar, A. Increases in COVID-19 are unrelated to levels of vaccination across 68 countries and
2947 counties in the United States. Eur J Epidemiol (2021). https://doi.org/10.1007/s10654-021-00808-7

[3] https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3838993

[4] The powers of municipal corporations are not to be enlarged by liberal construction of the statutes granting the powers; *Collin v. Chicago Park Dist*., 460 F.2d 746 (7th Cir. 1972); *Forest Preserve Dist. of Cook County v. Jirsa*, 336 Ill. 624, 168 N.E. 690 (1929); *Washburn v. Forest Preserve Dist. of Cook County*, 327 Ill. 479, 158 N.E. 801 (1927). such statutes are to be strictly construed *City of Chicago v. Barnett*, 404 Ill. 136, 88 N.E.2d 477 (1949); *Father Basil's Lodge v. City of Chicago*, 393 Ill. 246, 65 N.E.2d 805 (1946). against the municipality. *Ross v. City of Geneva*, 71 Ill. 2d 27, 15 Ill. Dec. 658, 373 N.E.2d 1342 (1978); *City of Chicago Heights v. Western Union Tel. Co*., 406 Ill. 428, 94 N.E.2d 306 (1950). Thus, any fair or reasonable doubt of the existence of the power is resolved against the municipality which claims the right to exercise it, *City of Chicago v. Barnett*, 404 Ill. 136, 88 N.E.2d 477 (1949); *Father Basil's Lodge v. City of Chicago*, 393 Ill. 246, 65 N.E.2d 805 (1946). especially where the power in question is unusual, attended with taxes, tolls, assessments, burdens on the inhabitants, or oppresses them, or abridges natural or common rights. *City of Savanna v. Robinson*, 81 Ill. App. 471,

terminate a municipal employee's employment without city council approval when no such authority is expressly or impliedly conferred on the mayor by applicable law or the council. Also, it has been held a mayor's powers under statute and municipal code to appoint, reassign and remove city employees did not include power to ignore terms of employment contracts entered into by city.

47.     The city is violating the principle of separation of powers, this principle is 'as a general rule inherent in the American constitutional system.' *Springer v. Government of Philippine Islands*, 277 U.S. 189, 201, 48 S.Ct. 482, 72 L.Ed. 845. It is 'inherent' even though unexpressed in the fundamental law. Where legislative, executive and judicial powers are distributed by the fundamental law among separate departments the courts are constrained to read into the law as a logical conclusion the implied provision that the powers so distributed are to be forever 'separate and distinct from each other.' So, in that case, the court said that 'some of our state Constitutions expressly provide in one form or another that the legislative, executive, and judicial powers of the government shall be forever separate and distinct from each other. Other Constitutions, including that of the United States, do not contain such an express provision. But it is implicit in all, as a conclusion logically following from the separation of the several departments.'

48.     The powers conferred upon may not  be exercised in manner which would infringe upon the independence of the city Council.[5]

_____

1898 WL 3055 (2d Dist. 1899).

[5] The separation of powers doctrine contained in Section 1 of Article II of the Illinois Constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. The Illinois Supreme Court has consistently interpreted this section to mean that the whole power of two or more branches of the government shall not be compressed into a single branch of the government ( Emphasis added). *Best v. Taylor Machine Works*, 179 Ill.2d 367, 410, 689 N.E.2d 1057, 1078 (1997); *Strukoff v. Strukoff*, 76 Ill.2d 53, 58, 389 N.E.2d 1170, 1172 (1979).

49. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

50. The substantive component of the Due Process Clause "limits what the government may do in both its legislative…and its executive capacities." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1988). Specifically, substantive due process protection prohibits the government from taking action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987).

51. Where the challenged conduct is legislative in nature the Plaintiff must show both (1) a valid property interest, [liberty] or fundamental right and (2) that the defendants infringed that [liberty or] property interest in an arbitrary or irrational manner." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001).

52. Liberty "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972).

53. The right to pursue a profession—particularly one as important to the public good and as revered in civil society is a liberty interest for which one enjoys substantive due process protection. *Allgeyer v. Louisiana*, 165 U.S. 578, 589 (1897) (holding that "the 'liberty' mentioned in th[e] [Fourteenth Amendment] … is deemed to embrace the right of the citizen … to earn his livelihood by any lawful calling"). *See also Marino v. City Univ. of N. Y*, 18 F. Supp. 3d 320, 339 (E.D.N.Y. 2014) (noting that "a person's right to pursue the profession of his choice is recognized as a constitutionally protected liberty interest").

54. The mayor's Order shocks the conscience and interfere with Plaintiff's deeply rooted liberty interests, including the right to work their chosen profession.

23

55.     If Defendants enforce the Order, Plaintiff may lose their income, their seniority, and/or their health benefits. Termination will result in Plaintiff being irreparably harmed.

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

A. Awarding Plaintiff damages from Defendants' violation of their constitutional right to substantive due process;
B. Costs of suit herein;
C. Investigation costs;
D. Payment of reasonable attorneys' fees;
E. Declaratory relief;
F. Injunctive relief;
G. Such other and further relief as the Court may deem just and proper.

**COUNT II VIOLATION OF UNITED STATES CONSTITUTION – FOURTH AND FOURTEENTH AMENDMENTS Right to Privacy 42 U.S.C. § 1983 (Against All Defendants)**

56.     Each of the preceding paragraphs is hereby incorporated and realleged as though fully set forth herein.

57.     Each of the named Defendants is charged with the implementation and enforcement of the Ordinance. Their current and prospective conduct in such implementation and enforcement is done under color of law.

58.     The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

59.     The Fourth Amendment has been made applicable to the states and their political subdivisions through the Fourteenth Amendment.

60.     Congress has authorized suits to enforce federal constitutional rights by way of 42 U.S.C. Section 1983.

61.     The United States Supreme Court has explained that invasive medical testing, injections, and other bodily intrusions constitute a search within the meaning of the Fourth Amendment. The Constitution protects a person's right to refuse unwanted medical care. This right is so rooted in our history, tradition, and practice as to require special protection under the Fourteenth Amendment.

62.     Americans do not surrender their constitutional rights, including their Fourth Amendment rights, when they become public officials, appointees, or employees.

63.     The city enacted the Ordinance with the stated purpose "to require COVID-19 vaccination for all current and future City employees."

64.     Defendants have no reasonable basis for believing that all or even most of the individuals it is ordering to be vaccinated or subjected to testing pose any greater threat to public safety than members of the general population, or than the other City employees who are vaccinated.

65.     The highly intrusive, forced injection of a COVID-19 vaccine into Plaintiffs against their will is anathema to the Fourth Amendment and to the Plaintiffs.

66.     The Ordinance mandates vaccines that continue to be experimental.

67.     Plaintiffs have never before been subjected to highly intrusive, weekly medical testing as part of their job classifications or positions.

68.     Plaintiffs therefore have a longstanding, reasonable expectation that their public employment and positions will not be conditioned on either vaccination or repeated, intrusive medical testing.

69.     The Ordinance conditions their full participation in public employment on the relinquishment of their Fourth Amendment rights.

25

70. The City's mandate does not provide an "opt-out" for any employee, including those with natural immunity as a result of contracting and fully recovering from COVID-19.

71. The Ordinance offers limited medical and religious exemption options but penalizes those seeking such exemptions by requiring invasive testing for COVID-19.

72. Plaintiffs face imminent loss of their public positions unless they give up their Constitutionally protected rights.

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

A. Plaintiffs are entitled to a declaration that the Ordinance violates the Fourth and Fourteenth Amendments.

B. Plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting Defendants from enforcing the ordinance against them.

C. Plaintiffs are entitled to nominal damages for the threatened invasion of their privacy rights accomplished by enactment of the Ordinance.

D. Plaintiffs are entitled to compensatory damages in an amount according to proof.

E. Plaintiffs are entitled to their reasonable costs of suit and attorneys' fees.

F. Plaintiffs are entitled to such other and further relief as the Court may deem appropriate.

**COUNT III VIOLATION OF UNITED STATES CONSTITUTION – FOURTEENTH AMENDMENT Right to Due Process 42 U.S.C. § 1983 (Against All Defendants)**

73. The preceding paragraphs are hereby incorporated and realleged as though fully set forth herein.

74. Defendant is charged with the implementation and enforcement of the Ordinance. Defendant's  current and prospective conduct in such implementation and enforcement is done under color of law.

75.     The Due Process Clause of the Fourteenth Amendment provides: "nor shall any state deprive any person of life, liberty, or property, without due process of law ... ." U.S. Const., amend. XIV, sec. 1.

76.     Plaintiffs have fundamental Constitutional rights to bodily integrity, including, especially, to be free from unconsented to or coerced medical treatment.

77.     Defendant is a state actor and has instituted or imminently intend to institute the COVID-19 vaccine mandate under color of law.

78.     Unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them. An overarching principle, known as the unconstitutional condition doctrine ... vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up.

79.     Unconstitutional conditions case law often references the existence of varying degrees of coercion. Accordingly, Defendants cannot impair Plaintiffs right to refuse medical care through subtle forms of coercion any more than it could through an explicit mandate.

80.     For Plaintiffs to prevail, unconstitutional conditions claims do not need to establish that a challenged government policy amounts to coercion. Instead, it is sufficient that the Ordinance burdens a constitutional right by imposing undue pressure on an otherwise voluntary choice with a nexus to the exercise of a constitutional right. This is especially true when a government actor couples an unconstitutional condition with a procedural system stacked against the right-holder.

81.     Plaintiffs possesses both a liberty interest in their bodily integrity and the property interests associated with their employment by the City.

82. This real controversy exists between Plaintiffs and Defendants, in that Defendants contend that they have the right, the power, and the authority to require Plaintiffs' coerced vaccination as a condition of employment, and Plaintiffs maintain that such coercion is a form of duress, because they have the fundamental constitutional and statutory right to refuse vaccination without disruption of their livelihoods.

83. The Ordinance presumes without any evidence that employees with natural immunity to COVID-19 present a risk to themselves, their fellow employees and the community in general. Relying on this presumption, Defendants fail to provide any process for an employee to opt out of the mandatory vaccination because of natural immunity to COVID-19, and still preserve their rights to bodily integrity and the property interests associated with their employment by the City.

84. The ordinance also presumes without any evidence that daily health screenings and quarantine upon positive test results is any less effective in protecting the peace, health and safety of the employees, and the community, than highly intrusive testing methods, mask wearing, or participating in vaccine education classes. Daily screening can be accomplished the same way it has been for other viruses and the way it was before the vaccines were available.

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

A. Plaintiffs are entitled to a declaration that the Ordinance violates the Due Process Clause of the Fourteenth Amendment.

B. Plaintiffs are further entitled to preliminary and permanent injunctive relief prohibiting Defendants from enforcing the Ordinance.

C. Plaintiffs are entitled to compensatory damages in an amount according to proof.

D. Plaintiffs are entitled to their reasonable costs of suit and attorneys' fees.

E. Plaintiffs are entitled to such other and further relief as the Court may deem appropriate.

**VIOLATION OF THE FREE EXERCISE CLAUSE
OF THE FIRSTAMENDMENT TO THE UNITED STATES CONSTITUTION.
(42 U.S.C. § 1983) AND TITLE VII OF THE 1964 CIVIL RIGHTS ACT BASED ON
RELIGION, RACE, NATIONAL ORIGIN/ETHINICITY AND TITLE II of the
GENETIC INFORMATION NONDISCRIMATION ACT OF 2008 (GINA) WHICH WE
MAY AMEND AS SEPARATE, BUT INTERRELATED COUNTS, IN A FUTURE
AMDENDED COMPLAINT**

85.     Plaintiffs hereby reallege and adopt each and every allegation above as if fully set forth herein.

86.     The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs 'rights to free exercise of religion.

87.     Plaintiffs have sincerely held religious beliefs that compel them to refuse vaccination with abortion-connected vaccines.

88.     Plaintiffs reallege the discussion of their sincerely held religious beliefs as set forth in all the preceding paragraphs.

89.     Title VII of the Civil Rights Act of 1964 is a federal law that prohibits employers from discriminating against employees on the basis of sex, race, color, national origin and religion. It generally applies to employers with 15 or more employees, including federal, state and local governments. Since vaccination rates in general, and COVID-19 vaccination rates in particular are lower among Black African Americans and Hispanics/Latinos, this mandate has an adverse and discriminatory act on Black African Americans and Hispanics/Latinos. It is discriminatory in effect. The studies, research and date demonstrate that a mandate, instead of communicating with sensitives to cultural differences, education, more access and other reasons would enhance increased vaccination rates, and not mandates and signing into a portal under coercion and duress. Title II of the Genetic Information Nondiscrimination Act of 2008 (GINA), which prohibits genetic information discrimination in employment, took effect on November 21,

29

2009. Under Title II of GINA, it is illegal to discriminate against employees or applicants because of genetic information.

90.     The Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting them from seeking and receiving exemption and accommodation for their sincerely held religious beliefs from their employers, with the city not genuinely reviewing any of the request and not allowing the employees to make an appeal as they would in any other case.

91.     The Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs'sincerely held religious beliefs, compels them to abandon their beliefs or violate them under coercion, and forces Plaintiffs to choose between their religious convictions and the State's patently unconstitutional value judgment that their religious beliefs are of no account.

92.     The Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

93.      The Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their occupations, professional standing, licenses, reputations, and ability to support their families.

94.      The Vaccine Mandate and the current exceptions, on its face and as applied, is neither neutral nor generally applicable as it grants the possibility of exceptions only to certain religions but bars religious exemptions according to the State's unconstitutional value judgment that certain religions are less important than others.

95.     The Vaccine Mandate, on its face and as applied, thus targets Plaintiffs' religious beliefs for disparate and discriminatory treatment.

96.    There is no legitimate, rational, or compelling interest in the Vaccine Mandate's exclusion and refusal to grant  exemptions and accommodations for sincerely held religious beliefs, especially given the following facts: (a) those exempted for reasons of "health" are no less susceptible of contracting and spreading COVID (the prevention of which is the very reason for the Vaccine Mandate) than those who would be exempted for reasons of religion (b) that the available COVID-19 vaccines are clearly failing to prevent transmission or infection, so that "booster shots" are now being promoted; (c) even the vaccinated must continue to wear masks as if they were not vaccinated because they can still be infected or infect others; (d) that naturally immune persons who have recovered from COVID have superior immunity and do not need vaccination; (e) that vaccinating naturally immune people may harm them by causing a hyperimmune response; and (f) that vaccinated persons are being admitted to the hospital along with unvaccinated persons.

97.    The Vaccine Mandate is not the least restrictive means of achieving an otherwise permissible government interest, which could be achieved by the same protective measures (masking, testing, quarantining, etc.) already being required of the vaccinated and the unvaccinated alike.

98.    The Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social and economic consequences pleaded above.

99.    Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional liberties and sincerely held religious beliefs.

100.    All of the Plaintiffs are on a "No Pay" status with no ability to appeal this status. They are losing income that adversely affects their ability to pay their debts, bills, rent or

mortgage, car payments, buy food, and provide for their families and children. This is punitive and violates the Plaintiff's Civil Service Status and their union contracts. This is unequitable and shocks the conscious that all these people would receive no pay and with no ability appeal it and no exemptions being ruled on.

101.    Tomorrow, Mayor Lori Lightfoot is cutting off the Medical Insurance and all medical benefits, of all those who did not sign into the portal, and are on no pay status, including all the Plaintiffs in this case and many others. This includes those who requested legitimate exemptions on religious and conscience grounds.

102.    Since the medical insurance is being cut off tomorrow, we ask for an immediate hearing and request a hearing tomorrow in the AM, and that this Honorable Court hear our Temporary Restraining Order and a) Vacate the Vaccine Mandate b) If the Vaccine Mandate is not vacated on an emergency basis, then all Alderman should be mandated to get the vaccine or at least all Alderman who voted against the challenge this mandate or did not vote. c) Immediately Reinstate all these Plaintiffs (and all on the "No Pay" status) back to work, or d) even if they are not back at work, that while this case is pending, these Plaintiffs (and all those on a no pay status) be placed on a "Pay Status" and get their pay cheques immediately  e) Receive all back pay. f) That the city pays for the fees of the Plaintiffs' Attorney(s). g) Restrain the City of Chicago from cutting these Plaintiffs off of their medical insurance and keep all medical insurance, dental insurance and all medical benefits intact. h) Enjoin Mayor Lori Lightfoot and the city of Chicago from threatening, and trying to stop these Plaintiffs, and all city of Chicago employees who are on the "No Pay Status" from retiring, or cashing out their pensions. i) Ensuring that all these Plaintiffs retain and continue to have all their accrued time, pension time, vacation time, sick time and all other time and benefits while this case is pending.

103.     This case, because of the Plaintiffs being on a no pay status, and being cut off their insurance tomorrow, must be heard (at least in part) on an emergency basis tomorrow, November 1st, in the morning.

WHEREFORE, the Plaintiffs in this case respectfully file this case, and respectfully request this case to be heard on an emergency basis as a  Temporary Restraining Order , respectfully request for an emergency hearing on November 1st in the AM.

**DATED: October 31, 2021**

Respectfully Submitted,

*/s/ Frank Avila*
Electronic Signature of Frank Avila

Frank Avila
Attorney and Counselor at Law
Attorney for the Plaintiffs in this case
ARDC Number: 6273730
7132 North Harlem Avenue
Suite 107
Chicago, IL 60631
Telephone Number: (773) 671-3480
E-mail: FrankAvilaLaw@GMail.com
E-mail service accepted and preferred