UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kelly Cisneroz, Maria Ramirez, | ) | |
| Robert Nowak, Kelly Joiner, | ) | |
| Samantha Green, James Caruso, | ) | |
| Jose Martinez, Sean Doyle, | ) | No. 1:21-cv-5818 |
| Jeremy Wakefield, Michael Maida, | ) | |
| Kurt Steigerwald, Edward J Fields, | ) | |
| individually and on behalf of similarly | ) | Honorable Sharon Johnson Coleman |
| situated employees of CITY OF CHICAGO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| City of Chicago, a municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' EMERGENCY PETITION
FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Plaintiffs, individually and on behalf of similarly situated employees of the CITY OF CHICAGO, by and through their attorney, Frank Avila, hereby request that this Honorable Court enter a Temporary Restraining Order and Preliminary Injunction, 1.) an Order requiring the city to review the religious exemptions and grant those that were submitted in good faith and provide reasoning for those it denies. 2.) Allow employees to bring their administrative claims to the human recourse board within 10 days per the current rule 3.) until the courts make a full ruling on this and other pending cases order the city to not take away salary and health insurance 4.) Either halt the mandate or enforce it on all city personal including in the same manner namely alderman, and police officers. (Police Officers after the decision in the state court cases by the FOP)

1

**ARGUMENT**

A plaintiff seeking a preliminary injunction must establish 1.) that he is likely to succeed on the merits, 2.) that he is likely to suffer irreparable harm in the absence of preliminary relief, 3.) that the balance of equities tips in his favor, and that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). Each of these factors weighs heavily in favor of Plaintiffs.

Plaintiffs are likely to succeed on the merits of their case. There is a likelihood of success on the meris for four reasons: 1.) both Executive Orders, violate the US Constitution's guarantee of substantive due process; 2.) the Executive Orders are illegal under Illinois law, and therefore violate Plaintiffs' rights to procedural due process; 3.) the Executive Orders violate Plaintiffs' rights under the free exercise clause of the First Amendment; and 4.) terminating or suspending employees for refusing to vaccinate violates the Illinois Healthcare Right of Conscience Act, 745 ILCS 70 et seq

The City of Chicago's Mayor's office unilaterally announced the vaccine mandate without the approval of the City Council, which has remained silent. The mandate fundamentally changes the nature of Plaintiffs' contracts with their employer, the City of Chicago. Further, Plaintiffs are not being permitted to grieve their suspension before being summarily suspended without pay. The City mandates therefore violate procedural due process as well.

I. **Plaintiffs' have a likelihood of success based upon the Free Exercise Clause.**

The First Amendment prohibits a state or municipality from "prohibiting the free exercise" of religion. "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions," triggers strict scrutiny under the Free Exercise Clause. Trinity Lutheran Church of Colombia Inc. v. Comer, 137 S.Ct. 2012, 2022 (2017), cited by Dahl v. Board of

2

Trustees of Western Michigan Univ., ____ F.4th ____ (6 Cir., 2021)("finding that the vaccine mandate employed by Western Michigan University violated the Free Exercise clause when requests for religious accommodations were rejected.").

"A policy that forces a person to choose between observing her religious beliefs and receiving a generally available government benefit for which she is otherwise qualified burdens her free exercise rights." Dahl, citing Fulton v. City of Phila., 141 S. Ct. 1868, 1867 (2021), and Trinity Lutheran, 137 S.Ct. at 2023. "The reason is simple: denying a person "an equal share of the rights, benefits, and privileges enjoyed by other citizens because of her faith discourages religious activity." Dahl, citing Lying v. Nw. Indian Cemetery Protective Ass'n, 485 U.S., 439, 449 (1988). A policy that "extends discretionary exemptions to a policy… must grant exemptions for cases of 'religious hardship' or present compelling reasons not to." Dahl, citing Fulton, 141 S.Ct. at 1877. This is true despite Employment Division v. Smith, 494 U.S. 872 (1990).

In Dahl, the Sixth Circuit Court of Appeals found that a university's vaccine mandate (which is nearly identical in application to Cook County's) violated the Free Exercise clause by providing a mechanism for individualized exemption, but not exempting those with deeply held religious beliefs against taking the COVID-19 vaccine. In doing so, it cited both Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 456 (1993) and Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63 (2020). Cuomo is particularly instructive in that in that decision, the Supreme Court found that exempting certain businesses from lockdowns while still requiring religious institutions to lock down violated the Free Exercise clause because the latter were "comparable" for the purposes of spreading Covid. Id. at 66. Here too, if religious

exemptions are not being approved while other comparable exemptions are being approved, the First Amendment has been violated.

To counsel's knowledge applications for religious exemptions are simply being denied without being reviewed or employee benefits are being terminated without anyone reviewing Plaintiff's forms, no decision is being issued and employees are being prevented from administrative review of the city's decisions.

**II. Plaintiffs will suffer irreparable harm if Defendants are not enjoined. The matter of irreparable harm is somewhat simpler.**

The Seventh Circuit has found that violations of individuals' constitutional rights constitute irreparable harm as a matter of law. Joelner v. Village of Washington Park, Illinois, 378 F.3d 613, 620 (7th Cir., 2004); see Klaassen v. Trustees of Indiana University, 2021 WL 3073926, 41 (N.D. Indiana, 2021), applying the same analysis to vaccine mandates in the context of students at a university. In this case, Plaintiffs have been given an unconstitutional and illegal ultimatum: violate their deeply held beliefs or be suspended and then terminated. They will suffer irreparable harm as a matter of law if this Court does not intervene.

**III. The Balancing of Equities, and the Public Interest Favors Plaintiffs.**

"The court weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." Turnell v. CentiMark Corp., 796 F.3d 656, 662 (7th Cir.2015). The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." Stuller, Inc. v. Steak N Shake Enterprises, Inc., 695 F.3d 676, 678 (7th Cir.2012). "Stated another way, the district court 'sit[s] as would a chancellor in equity' and weighs all the factors, 'seeking at all

times to minimize the costs of being mistaken." Id. "This weighing process, as noted, also takes into consideration the consequences to the public interest of granting or denying preliminary relief." Abbott Lab'ys v. Mead Johnson & Co., 971 F.2d 6, 12 (7th Cir. 1992). The balancing of the equities favors Plaintiffs for the reasons addressed above. There is a likelihood of success on the merits. The public interest is best upheld through fidelity to the rule of law and the Constitution, and Illinois statute. The vaccines pose potential harms to Plaintiffs. To the claim that the vaccine mandate may save lives – the more we learn about them, the less certain that is. Plaintiffs have been functioning in their roles, having significant interactions with the community around them, for the last eighteen months. There has been no showing, either in the factual recitations of the Executive Orders, or in the findings of any of the other Defendants, that Plaintiffs pose a risk to their surroundings. To the contrary, they are a credit to the institutions of mental and physical health and wellbeing in the State of Illinois. To now scapegoat them by implying that absent some top-down mandate impacting their fundamental rights that they pose a risk to the community they heroically serve is a disservice to them and the people of this State. Finally, since the Executive Order is illegal under the Illinois Emergency Management Act, and since the legislature has had ample opportunity to act (and continues to be able to do so), were the Court to determine that the most successful prong of this attack is the procedural prong, it would not be denying the State the opportunity to write and pass whatever legislation is necessary to protect the populace. This state has existed far too long in a state of executive fiat. The long-term impact of that power grab may be at least as far reaching as the long-term impact of the pandemic and may well exceed it. Conclusion Plaintiffs have made a showing that they are entitled to a Temporary Restraining Order and a Preliminary Injunction. While the pandemic is, indeed, a frightening affair – many if not all of the people in this country have lived in

understandable fear for the greater part of the last eighteen months – it should not be an excuse to turn the procedural and substantive rights of the people of this state on their heads. Plaintiffs are entitled to an injunction as a matter of law and fact.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter a Temporary Restraining Order and a Preliminary Injunction 1.) an Order requiring the city to review the religious exemptions and grant those that were submitted in good faith and provide reasoning for those it denies. Return all these Plaintiffs in this case and all similarly situated employees to work, or on a full pay status if they are not present at work. Violating the Freedom of Religion is a violation of the Constitution and contrary to cases that already have been successful. Putting city workers on a novel "No Pay Status" (That does not exist in the law and the Mayor not the city have the authority to create this status nor the Vaccine Mandate)—a "No Pay" status that they cannot collect unemployment on, nor get another job due to city rules—increasing the equivalent of unemployment and putting these Plaintiffs, and many other city workers, into a situation where they cannot pay their bills, go into debt, and increase bankruptcy and poverty—this is cruel and horrific and goes against human decency. 2.) Allow employees to bring their administrative claims to the human recourse board within 10 days per the current rule 3 or let their unions appeal this per their respective union contract(s), until the courts make a full ruling on this and other pending cases order the city to not take away salary and health insurance—retain health insurance for all employees and either return them to their job or while they are not at work they are kept in a pay status, or in the alternate at half pay or other pay status (depending on job and union) pending their Human Resources Board hearing or Grievance or Arbitration. 4.) Either halt the mandate or enforce it on all city personal including in the same manner namely alderman, and police officers. 5) Restrain Mayor Lori Lightfoot and her agents, and the City of

Chicago from threatening and from actually trying to stop city employees from retiring or cashing out their payments. These city employees are working class people, all are essential workers, some are first responders, and all are union members and to put them in a novel "No Pay Status" is drastically hurting them and their families. If these essential workers (who worked through the entire COVID-19 pandemic and the summer of 2020 chaos of riots, looting, arson, highest murder rate in 60 years, attacks on city workers, attacks on city vehicles, no days off, 12 hour days, working in dangerous neighborhoods and in large crowds, arson of police vehicle, spitting on police officers, throwing bricks etc., most are middle aged people with families) lose their health insurance, this could dramatically effect these essential workers and their families. They may not be able to purchase prescription medications nor access health care for them and their families—this is punitive, dangerous, sick, disgusting, inequitable and shocks the conscious. Forcing people to lose their health care during the COVID-19 pandemic is cruel and could be irreversible and thus the status quo should remain.

**DATED: November 1, 2021**

Respectfully Submitted,

*/s/ Frank Avila*
Frank Avila

Frank Avila (ARDC # 6273730)
7132 North Harlem Ave. /Suite 107
Chicago, IL 60631
Ph (773) 671-3480
Em FrankAvilaLaw@gmail.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on November 1, 2021, that he caused to be electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record who are ECF filers.

/s/ Frank Avila