UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY CISENEROZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 21-cv-5818 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, who are City of Chicago employees including police officers, have brought this lawsuit against the City in relation to the City's COVID-19 vaccine mandate. Before the Court is plaintiffs' motion for a temporary restraining order ("TRO") brought under Federal Rule of Civil Procedure 65. For the following reasons, the Court, in its discretion, denies plaintiffs' motion because they have failed to make a strong showing that they will likely succeed on the merits of their claims.

**BACKGROUND**

On August 25, 2021, the City of Chicago announced a vaccination policy requiring all City employees to be fully vaccinated against COVID-19 by December 31, 2021, absent an approved medical or religious accommodation. By October 15, 2021, City employees were required to disclose their vaccination status through a confidential, secure portal maintained on the City's website. The City has provided evidence in response to plaintiffs' motion that the information uploaded to the portal is treated as a confidential medical record and is retained by the City's Department of Human Resources in separate confidential files. These confidential files will only be shared in accordance with the Americans with Disabilities Act.

Under the City's policy, employees who were not fully vaccinated by October 15, 2021, must submit to twice-weekly testing until they are fully vaccinated. The City's vaccination policy contains a sunset provision under which the option to submit to bi-weekly testing as an alternative to the vaccination expires on December 31, 2021. The City's Policy reads in relevant part:

A. Effective October 15, 2021, City employees, as a condition of employment, and personnel of contractors and vendors as outlined in Section II., must either be fully vaccinated against COVID-19 or undergo COVID-19 testing as set forth in Section IV.B. You are considered fully vaccinated 14 days after receiving the final dose of a two-shot vaccine (Moderna or Pfizer) or a dose of a one-shot vaccine (Johnson & Johnson). All City employees who are fully vaccinated by October 15, 2021 shall receive one (1) personal day that must be used by June 30, 2022. The personal day granted by this Policy shall not count toward the carryover day limit contained in an employee's applicable collective bargaining agreement.

B. Employees, volunteers, and contractors who are covered by this policy who are not vaccinated, for reasons including but not limited to verified medical conditions or restrictions or sincerely held religious beliefs (as discussed in Section VI), must undergo COVID-19 testing on a twice weekly basis with tests separated by 3-4 days. Employees shall be responsible for obtaining tests on their own time and at no cost to the City and reporting those results in the manner described by Section VII below. This testing option will sunset on December 31, 2021. Thereafter, employees, volunteers, and contractors covered by this policy must be fully vaccinated as a condition of employment unless they have received an accommodation as described in Section VI below.

C. Employees who are not fully vaccinated by December 31, 2021, unless they have received an approved exemption as described in Section VI will be placed in a non-disciplinary no-pay status until they have become fully vaccinated.

D. Employees, volunteers, and contractors covered by this Policy with a medical condition or other medical restrictions that affects their eligibility for a vaccine, as verified by their medical provider, or those employees with a sincerely held religious belief that prohibits them from receiving a vaccine, may request a reasonable accommodation as described in Section VI below.

E. Violations of this policy, including but not limited to, non-compliance with this Section; or providing false or misleading information about vaccination status, test results, or the need for an accommodation; or the failure to test as applicable as discussed in Section VII, will result in disciplinary action up to and including discharge.

Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated alleging that the City's vaccine mandate violates their constitutional rights. In their complaint, plaintiffs specifically allege that the City's vaccine mandate violates (1) their Fourth and Fourteenth Amendment right to privacy, (2) their substantive and procedural due process rights under the Fourteenth Amendment, and (3) the Free Exercise Clause of the First Amendment. Although the focus of plaintiffs' motion for a TRO was their First Amendment Free Exercise Clause claim, in their late-filed reply brief, plaintiffs assert theories and arguments that were not set forth in their class action complaint nor in their motion for a temporary restraining order. The Court thus gave the City an opportunity to file a sur-reply to address these new arguments. The motion for a TRO is now fully briefed.

## LEGAL STANDARD

The standards for the issuance of a temporary restraining order ("TRO") and a preliminary injunction are the same. *Cassell v. Snyders*, 458 F.Supp.3d 981, 990 (N.D. Ill. 2020) (Lee, J.). Both are "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (citation omitted). A party seeking a TRO must first demonstrate: (1) the likelihood of success on the merits; (2) there is no adequate remedy at law; and (3) irreparable harm is likely in the absence of the temporary restraining order. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021). If the moving party fails to demonstrate any one of these three threshold requirements, the Court must deny the motion. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). On the other hand, if the moving party makes this threshold showing, the Court then balances the harms between the parties and the effect on the public interest. *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020). The Court has considerable discretion in determining TRO motions. *Cassell*, 990 F.3d at 545.

## DISCUSSION

*First Amendment Free Exercise Clause*

The Court starts with plaintiffs' Free Exercise Clause claim turning to the likelihood of success on the merits, which requires plaintiffs show more than a "mere possibility of success." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Rather, plaintiffs must make a strong showing that they will likely succeed on the merits of their claims. *See id.*; *Tully,* 977 F.3d at 613. Plaintiffs have failed to make any such showing in relation to their Free Exercise claim.

In their motion, plaintiffs maintain that the City is denying applications for religious exemptions without reviewing the applications or, in the alternative, that no decisions are being issued. The City, however, has presented evidence to the contrary, namely, that as of November 5, 2021, the City has received approximately 6,300 applications seeking a religious exemption, and that the vast majority of these requests are still being reviewed and are under consideration. The City has also set forth evidence that seven of the thirteen named plaintiffs have submitted religious exemption requests —none of which have been denied. In addition, as of November 5, 2021, no City employee has been terminated or lost his or her health insurance benefits because of their failure to: (1) report their vaccination status; (2) submit to bi-weekly testing; or (3) receive a COVID-19 vaccine. Instead, five of the plaintiffs have been placed on non-disciplinary "no pay status" because they have not reported their vaccination status as required by the City's policy.

Under this scenario, plaintiffs maintain that the City's vaccination policy violates the Free Exercise Clause because it forces employees to choose between observing their religious beliefs and receiving employee benefits. As discussed immediately below, plaintiffs do not have a likelihood of success on their Free Exercise claim because the City's vaccination policy is a neutral policy of general applicability that provides for religious exemptions.

"The principle that government, in pursuit of legitimate interests, cannot in a selective

manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). Nevertheless, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Employment Div., Dept. of Human Res. of Oregon v. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (citation omitted). The "[g]overnment fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia,* 141 S.Ct. 1868, 1877, 210 L.Ed.2d 137 (2021). A "neutral law of general applicability is constitutional if it is supported by a rational basis." *Illinois Bible Coll. Assoc. v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017).

On its face, the City's vaccination policy is a neutral law of generally applicability because it equally applies to all City employees, regardless of religious belief or affiliation. The policy does not single out any particular religious belief nor does it restrict practices because of their religious nature. In addition, any incidental effect in burdening religion is addressed by the policy's exemption for sincerely held religious beliefs, which states:

> The City provides religious accommodations to employees with sincerely held religious beliefs unless such an accommodation would create an undue hardship. Requests for accommodations will be made on a case-by-case basis consistent with existing procedures for reasonable accommodation requests.
>
> Employees who believe they need an accommodation regarding this policy because of a sincerely held religious belief may request a reasonable accommodation through the Department of Human Resources. A form for requesting such an accommodation is attached to this policy as Exhibit B.

Furthermore, the City's vaccine policy has a rational basis due to the severity of the COVID-19 pandemic, including the newly-discovered omicron variant, and the need to prevent the spread of the disease. *See Klaassen v. Trustees of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("vaccination

5

requirements, like other public-health measures, have been common in this nation"); *see e.g., Williams v. Trump*, 495 F.Supp.3d 673, 683 (N.D. Ill. 2020) (Kennelly, J.); *Village of Orland Park v. Pritzker*, 475 F.Supp.3d 866, 885 (N.D. Ill. 2020) (Wood, J.). Indeed, the City has presented evidence that City employees are twice as likely to be infected with COVID-19—as compared to all Chicago residents—due to City employees' frequent public contact based on the nature of their work. The success in controlling the spread of COVID-19 depends on developing immunities in all employees who have contact with each other and members of the public. The City's measures are rationally related to that legitimate state interest, especially in light of the newly-discovered omicron variant.

Next, as Judge Lee recognized when denying plaintiffs' temporary restraining order in a similar lawsuit, *Troogstad v. City of Chicago*, 21-cv-5600, plaintiffs' Free Exercise claim did not state a claim for an as-applied constitutional challenge to the policy. This is because the City has yet to deny any of the plaintiffs' requests for a religious exemption under the vaccination policy, which is also the case in this lawsuit. In short, plaintiffs' case is not ripe for adjudication in relation to an as-applied constitutional challenge. As such, plaintiffs have failed to make a strong showing as to the likelihood of success on the merits as to their Free Exercise Clause claim.

Moreover, plaintiffs' reliance on the Sixth Circuit's decision in *Dahl v. Board of Trs. of Western Michigan Univ.*, 15 F.4th 728, 732 (6th Cir. 2021) (per curiam) is misplaced because the plaintiffs in that lawsuit challenged the vaccine policy, as applied, because they were denied religious exemptions. Also, the per curiam panel concluded that the policy was underinclusive in achieving the university's interest in preventing the spread of COVID-19 because it only focused on student-athletes and not the thousands of other students at the university. The City of Chicago's policy, however, equally applies to all City employees, most of whom work with the public posing a serious risk to COVID-19 exposure and transmission. Last, plaintiffs' brief mention of the Equal Protection Clause in their reply brief does not change this analysis.

*Authority to Adopt Vaccine Mandate*

The Court next examines plaintiffs' argument made for the first time in reply that the City, via Mayor Lightfoot, exceeded its authority in adopting the vaccine mandate. Plaintiffs' bare-boned argument is that only the state legislature has the power to promulgate a vaccine mandate—a proposition that is not supported by the legal authority plaintiffs cite and is also belied by article VII, section 6(f) of the Illinois Constitution. Chicago is a home rule unit and has been granted the power "to regulate for the protection of the public health, safety, morals, and welfare." *Iwan Ries & Co. v. City of Chicago*, 160 N.E.3d 916, 920, 442 Ill.Dec. 736, 740, 2019 IL 124469, ¶ 20 (Ill. 2019) (citation omitted). Also, if plaintiffs are arguing that there is a separation of powers issue with the mayor adopting a vaccine mandate as opposed to the City council, plaintiffs' argument is misplaced because "[s]tate and local governments need not follow the pattern of separated powers in the national Constitution." *Auriemma v. Rice,* 957 F.2d 397, 399 (7th Cir. 1992). Further, as Judge Lee noted in his opinion denying plaintiffs' TRO in *Troogstad v. City of Chicago*, the City Council voted to keep the vaccine mandate in place in late October 2021. (21-cv-5600, R. 35, Mem. Op. & Order, at 19). Thus, plaintiffs' argument concerning the City exceeding its authority is without merit.

*Supremacy Clause/Title VII*

Plaintiffs also assert for the first time in reply that the City's vaccine mandate runs afoul of the Supremacy Clause because Title VII preempts the mandate. Simply put, under the Supremacy Clause, a local law is preempted by federal law where it is impossible to comply with both laws. *See Effex Capital, LLC v. National Futures Assoc.*, 933 F.3d 882, 893 (7th Cir. 2019); *see also Nelson v. Great Lakes Educ. Loan Servs., Inc.,* 928 F.3d 639, 646 (7th Cir. 2019) ("Since state law may not contradict federal law, sometimes the latter will render the former unenforceable.").

Title VII prohibits discrimination in employment on the basis of religion, *see* 42 U.S.C. § 2000e-2(a)(1), and requires that employers "offer a reasonable accommodation to resolve a conflict

7

between an employee's sincerely held religious belief and a condition of employment, unless such an accommodation would create an undue hardship for the employer's business." *EEOC v. Walmart Stores East, L.P.*, 992 F.3d 656, 658 (7th Cir. 2021) (quoting 42 U.S.C. § 2000e(j)). Here, the City offers a reasonable religious accommodation, namely, the exemption for religious beliefs. As such, the local vaccine mandate does not conflict with Title VII; therefore, plaintiffs have failed to make a strong showing that they will likely succeed on the merits of their claims.[1]

On a final note, the Court takes judicial notice that on November 1, 2021, Cook County Circuit Judge Raymond W. Mitchell stayed the December 31, 2021 vaccine deadline in the lawsuit *Fraternal Order of Police, Chicago Lodge No. 7, et al v. City of Chicago*, 2021 CH 5276. This stay applies to the police unions that filed the state court lawsuit relating to their collective bargaining agreements. The stay is in effect until the parties' arbitration proceedings are complete. Thus, this stay applies to the plaintiffs in this lawsuit who are members of the represented police unions in the state case. Last, the Court notes that since Judge Mitchell's ruling, COVID-19 cases in Chicago have significantly increased and the omicron variant was discovered.

**Conclusion**

The Court denies plaintiffs' motion for a temporary restraining order [6].

IT IS SO ORDERED.

Date: 12/1/2021

Entered:

SHARON JOHNSON COLEMAN
United States District Judge

---

[1] Because the Court concludes plaintiffs have failed to show the likelihood of success on the merits, the Court need not address plaintiffs' irreparable harm arguments.